SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**State v. Richard Gomes (A-64/65-21) (087192)**

**Argued January 3, 2023 -- Decided February 14, 2023**

**SABATINO, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In these consolidated appeals, the Court considers whether persons such as defendants Richard Gomes and Moataz M. Sheira, who received conditional discharges for marijuana offenses before the 2021 adoption of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), are statutorily ineligible for admission into the pretrial intervention (PTI) program for new offenses. PTI is a diversionary program that allows offenders to avoid criminal prosecution for certain first offenses in favor of an alternate disposition.

The defendants arrived here through different paths from separate counties but have several things in common. Both received a previous conditional discharge stemming from a possessory marijuana offense that is no longer unlawful in New Jersey after CREAMMA. They were both charged with new offenses and applied for admission into PTI. A trial court concluded Sheira was statutorily ineligible for PTI because of his previous conditional discharge for marijuana possession, but a different trial court reached the contrary conclusion as to Gomes. Applying the "one diversion only" general limitation of the PTI statute, N.J.S.A. 2C:43-12(g)(1), and the terms of expungement statutes enacted before CREAMMA, see generally N.J.S.A. 2C:52-1 to -32.1, the Appellate Division held that the defendants here are statutorily barred from PTI eligibility. 472 N.J. Super. 515, 536 (App. Div. 2022). The Court granted leave to appeal. 251 N.J. 468 (2022); 251 N.J. 471 (2022).

**HELD:** Persons who received pre-CREAMMA conditional discharges for specified marijuana offenses -- just like persons who had pre-CREAMMA convictions for those marijuana offenses -- are no longer categorically precluded from future admission into PTI. Instead, prosecutors and reviewing courts must consider the merits of their PTI applications, without regard to the existence or circumstances of the earlier marijuana-related conditional discharges. The holding harmonizes CREAMMA and its manifest legislative intent with the pre-existing general language of the PTI and expungement statutes, including the Legislature's command in CREAMMA to apply its reforms to "any case" that arose before its enactment.

1

1.  The Court reviews the history of the statutory scheme concerning pretrial intervention.  From the outset, the primary purpose of PTI has been to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system.  Up until the adoption of CREAMMA, PTI eligibility has been governed by the so-called "one diversion only" policy.  The PTI statute declares that "[i]t is the policy of the State of New Jersey that supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal offense under the laws of New Jersey."  N.J.S.A. 2C:43-12(a) (emphasis added).  With respect to defendants who have not been convicted of a past crime but who have instead received a conditional discharge or some other form of supervisory treatment, the PTI statute further provides in relevant part that "[s]upervisory treatment may occur only once with respect to any defendant and any person who has previously received . . . a conditional discharge."  N.J.S.A. 2C:43-12(g)(1) (emphasis added).  The text of the current Rule 3:28-1(c)(1), which has not been revised since CREAMMA's enactment, repeats the bars set forth in the statute and additionally bars PTI enrollment if the person "previously was enrolled in a diversionary program under the laws of any other state or the United States."  The Court reviews in detail two pre-CREAMMA Appellate Division cases that recognized the general "one diversion only" facet of the PTI statute.  (pp. 11-18)

2.  The Court turns to the history and pertinent terms of the New Jersey expungement statutes housed in Chapter 52 of the Code of Criminal Justice.  Among the components of Chapter 52 is a general provision delineating how expunged records "may" be supplied and used in relation to a defendant's present eligibility for supervisory treatment or diversion programs.  See N.J.S.A. 2C:52-20.  Another context in which expunged records generally are to be considered is in connection with pretrial release and bail determinations.  See id. at -21.  However, since the enactment of CREAMMA in 2021, one factor is explicitly excluded from consideration in such pretrial detention or bail decisions:  certain prior marijuana-related offense records.  (pp. 18-22)

3.  The Court reviews in detail the enactment of CREAMMA and two additional bills; together, the three bills establish a broad regime of civil and criminal provisions to regulate the newly legalized possession, consumption, and commercialization of cannabis and products that contain it.  In its findings and declarations section, CREAMMA articulates a legislative intent "to adopt a new approach to our marijuana policies . . . in a similar fashion to the regulation of alcohol for adults."  N.J.S.A. 24:6I-32(a).  The statute broadly includes fourteen other findings and declarations.  See id. at (b) to (o).  Among CREAMMA's provisions legalizing and regulating adult-use cannabis was an expansive expungement provision, codified at N.J.S.A. 2C:52-6.1, which directs automatic expungement -- "by operation of law" -- of "any case" that includes a prior conviction for the obtaining or possession of marijuana, certain other marijuana

2

offenses, and "any disorderly persons offense or petty disorderly persons offense subject to conditional discharge." Notably, the phrase "by operation of law" appears nowhere else in the entire Criminal Code. In conjunction with CREAMMA's automatic expungement provisions, the Attorney General issued a Law Enforcement Directive ordering that any guilty plea, verdict, placement in diversionary program, or other entry of guilt prior to that date for a qualified marijuana-related offense be fully vacated "by operation of law." In addition, the Attorney General's Directive ordered that "[a]ny [marijuana-related] disorderly persons offense or petty disorderly persons offense subject to conditional discharge pursuant to this section" be vacated. Ibid. (emphasis added). The Legislature did not include within CREAMMA an explicit provision revising the general PTI statute to address the impact of a previous-but-now-vacated conditional discharge upon a person's future PTI eligibility. Nor did the Legislature revise the expungement statute in a manner that addresses that particular eligibility question directly. However, the language of CREAMMA expungement is unique. It provides for automatic expungement of "any case" "by operation of law." N.J.S.A. 2C:52-6.1. That is unlike traditional expungement provisions. (pp. 22-28)

4. After reviewing relevant principles of statutory construction -- including that more recent provisions ordinarily supersede, qualify, or illuminate language adopted earlier and that more specific provisions usually control over more general ones -- the Court notes that the Legislature's choice of the term "may" in N.J.S.A. 2C:52-20 (the general expungement statute) versus "shall" in N.J.S.A. 2C:52-21 (which pertains to pretrial release and bail determinations) is consistent with a permissive, rather than mandatory, use of expunged records outside of a bail or pretrial detention context. Further, CREAMMA revised the expungement and drug statutes to vacate and expunge qualifying previous marijuana convictions and dispositions "by operation of law." N.J.S.A. 2C:52-6.1; N.J.S.A. 2C:35-23.1(b)(1) and (b)(2). At the very least, the phrase "by operation of law" signifies that an individual with an eligible marijuana conviction or conditional discharge should not have to take affirmative steps to file an expungement petition with a court or prove rehabilitation to obtain relief. And the Legislature's use within CREAMMA's expungement provision of a broad term -- covering "any case" that transpired prior to CREAMMA's effective date -- is especially instructive. See N.J.S.A. 2C:52-6.1. A former marijuana charge that resulted in a conditional discharge or other diversion is surely a "case." Indeed, the PTI statute itself logically refers to PTI as the treatment of a particular "case." See N.J.S.A. 2C:43-12(e)(15). (pp. 28-33)

5. The text of the PTI statute itself can be harmonized with CREAMMA in a similar manner. The Court is mindful of the PTI statute's generic language in N.J.S.A. 2C:43-12(g)(1) -- that a person with a previous conditional discharge "shall not be eligible" for PTI. But the PTI statute does not address the present distinctive and extraordinary situation in which conduct that had previously been deemed unlawful

3

is now, in retrospect, deemed to have not occurred.  The PTI statute does not say that its "one diversion only" general statutory bar must penalize individuals who had been charged with a marijuana offense that the Legislature has since declared, through a comprehensive reform law, to be a nullity.  In fact, persons who had previous marijuana <u>convictions</u> are allowed to apply for PTI when charged with new offenses.  There is nothing in the text or enactment history of CREAMMA that supports a legislative intent to deprive persons with previous <u>conditional discharges</u> of that same opportunity.  And there are reasons why the Legislature might have found it necessary to expressly provide that previous marijuana conditional discharges could no longer be considered in bail and pretrial detention but not to include a similar express prohibition for the PTI setting, namely the use of the mandatory term "shall" in N.J.S.A. 2C:52-21 versus "may" in N.J.S.A. 2C:52-20, as well as a desire to ensure that a previous marijuana conditional discharge would not provide the grounds to incarcerate an arrestee as a supposed public safety risk in light of the public policy issues addressed by the Criminal Justice Reform Act of 2014 (CJRA), N.J.S.A. 2A:162-15 to -26.  The Court's statutory interpretation is consistent with the litany of findings expressed in N.J.S.A. 24:6I-32(a) through (o), which reflect a clear legislative intent to construe CREAMMA and its companion bills broadly and robustly so as to achieve their remedial purposes.  (pp. 33-36)

6.  The Court explains that pre-CREAMMA opinions do not control the analysis of defendants' circumstances and notes that its holding here does not eviscerate in other non-marijuana contexts the "one diversion only" general mandate of N.J.S.A. 2C:43-12(g).  That provision continues to apply for such other matters not within CREAMMA's ambit.  Explaining that its reversal of the Appellate Division's decision does not automatically entitle a PTI applicant with a previous marijuana conditional discharge to be admitted into the program, the Court provides guidance for remand.  The Court stresses that this is an exceptional situation involving a sweeping new statute that it has endeavored to harmonize sensibly with pre-existing laws. (pp. 37-39)

**REVERSED.  Each case is REMANDED to the respective trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUDGE SABATINO's opinion.**

4

# SUPREME COURT OF NEW JERSEY
## A-64/65 September Term 2021
## 087192

---

State of New Jersey,

Plaintiff-Respondent,

v.

Richard Gomes,

Defendant-Appellant.

---

State of New Jersey,

Plaintiff-Respondent,

v.

Moataz M. Sheira,

Defendant-Appellant.

---

State of New Jersey,

Plaintiff,

v.

Jason Chiriboga,

Defendant.

---

State of New Jersey,

Plaintiff,

v.

Maju D. Barry,

Defendant.

_____

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
472 N.J. Super. 515 (App. Div. 2022).

| Argued | Decided |
|---|---|
| January 3, 2023 | February 14, 2023 |

_____

Alison S. Perrone, Deputy Public Defender, argued the cause for appellant in State v. Sheira (A-64-21) (Joseph E. Krakora, Public Defender, attorney; Alison S. Perrone, of counsel and on the brief).

Scott A. Gorman argued the cause for appellant in State v. Gomes (A-65-21) (Maitlin Maitlin Goodgold Brass & Bennett, attorneys; Scott A. Gorman, of counsel and on the brief).

Matthew W. Kelly, Assistant Prosecutor, argued the cause for respondent in State v. Sheira (A-64-21) (Robert J. Carroll, Morris County Prosecutor, attorney; Matthew W. Kelly, on the briefs).

Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent in State v. Gomes (A-65-21) (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

2

Matthew J. Platkin, Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, and Claudia Joy Demitro, Assistant Attorney General, of counsel and on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Michael B. Roberts argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Jeralyn L. Lawrence, President, of counsel, and Michael B. Roberts, on the brief).

CJ Griffin argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin, of counsel and on the brief, and Dillon J. McGuire, on the brief).

Akil Roper argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; Akil Roper, Dawn K. Miller, and Rosalyn Scriven, on the brief).

JUDGE SABATINO (temporarily assigned) delivered the opinion of the Court.

In 2021 the Legislature adopted the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), L. 2021, c. 16, a sweeping law that largely decriminalizes the simple possession of cannabis in New Jersey and redresses many lingering adverse consequences of certain

3

previous marijuana offenses. Among other things, CREAMMA signifies that such prior marijuana offenses must be deemed not to have occurred and directs, by operation of law, their automatic expungement from an offender's criminal record.

The two consolidated appeals before us pose the question of whether persons such as defendants Richard Gomes and Moataz M. Sheira, who received conditional discharges for marijuana offenses before CREAMMA's adoption, are statutorily ineligible for admission into the pretrial intervention (PTI) program for new offenses. PTI is a diversionary program that allows offenders to avoid criminal prosecution for certain first offenses in favor of an alternate disposition.

Applying the "one diversion only" general limitation of the PTI statute, N.J.S.A. 2C:43-12(g)(1), and the terms of expungement statutes enacted before CREAMMA, see generally N.J.S.A. 2C:52-1 to -32.1, the Appellate Division held that the defendants here are statutorily barred from PTI eligibility. The present appeals ensued.

Guided by fundamental principles of statutory interpretation, we harmonize CREAMMA and its manifest legislative intent with the pre-existing general language of the PTI and expungement statutes. Most notably, we carry

4

out the Legislature's command in CREAMMA to apply its reforms to "any case" that arose before its enactment.

Upon harmonizing the statutes, we conclude that persons who received pre-CREAMMA conditional discharges for specified marijuana offenses -- just like persons who had pre-CREAMMA convictions for those marijuana offenses -- are no longer categorically precluded from future admission into PTI. Instead, prosecutors and reviewing courts must consider the merits of their PTI applications, without regard to the existence or circumstances of the earlier marijuana-related conditional discharges. Our conclusion is consistent with the arguments of the Attorney General as the State's chief law enforcement officer, as well as all but one of the parties and amici before us.

We therefore reverse the Appellate Division's holding and remand for further proceedings in these consolidated cases.

I.

The defendants arrived here through different paths from separate counties, but they have several things in common. Both of them received a previous conditional discharge stemming from a possessory marijuana offense that is no longer unlawful in New Jersey after CREAMMA. They both have been charged with new offenses and have applied for admission into PTI. And both have been categorically excluded from PTI under the Appellate

5

Division's interpretation of post-CREAMMA law. Given those commonalties and the purely legal nature of the issues posed to us on appeal, the details regarding each defendant can be stated concisely.

In November 2020, defendant Gomes was charged in Middlesex County with third- and fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2).[1] In March 2021, defendant Sheira was charged in Morris County with two counts of third-degree possession of cocaine and heroin, N.J.S.A. 2C:35-10(a)(1).

Gomes and Sheira previously had been charged with disorderly persons offenses for possession of marijuana under the pre-CREAMMA terms of N.J.S.A. 2C:35-10(a)(4). In both cases, the charges were dismissed through a conditional discharge[2] following each defendant's successful completion of a diversionary treatment program under N.J.S.A. 2C:36A-1.

---

[1] Two other Middlesex County defendants with prior conditional discharges for marijuana possession were included in the consolidated cases at the Appellate Division, but they did not file motions for leave to appeal to this Court.

[2] Conditional discharges under N.J.S.A. 2C:36A-1 provide one-time alternatives to prosecution for persons charged with certain drug offenses. Unlike PTI dispositions, described more fully below, see N.J.S.A. 2C:43-13, which are largely left to the discretion of the prosecutor, a court can conditionally dismiss certain low-level drug charges upon its own motion or a motion by the defendant. N.J.S.A. 2C:36A-1(a). The court suspends the proceedings against the defendant and places the defendant in a supervisory treatment program. N.J.S.A. 2C:36A-1(a)(1). If the defendant completes the terms of the treatment program, the court dismisses the charges. N.J.S.A.

6

Gomes and Sheira each filed applications for admission into PTI for their respective new charges. In the case of Sheira, a criminal division manager notified him that he was ineligible due to his prior conditional discharge. Sheira filed a PTI motion with the support of the Morris County Prosecutor. However, the motion was denied by the trial court, which concluded Sheira was statutorily ineligible for PTI because of his previous conditional discharge for marijuana possession. Sheira moved for leave to appeal that ruling.

As for Gomes, a criminal division manager notified him that he too was ineligible for PTI. Gomes filed a PTI appeal to the Law Division. The Middlesex County Prosecutor opposed his PTI appeal, arguing he was ineligible because of his pre-CREAMMA conditional discharge for marijuana

2C:36A-1(b). But if the defendant violates the terms, the court will reopen the proceedings. Ibid.

Conditional discharge is only open to those charged with disorderly and petty disorderly persons drug offenses under Chapters 35 and 36 of the Criminal Code. N.J.S.A. 2C:36A-1(a). Before the enactment of CREAMMA, those eligible marijuana- or hashish-related offenses were restricted to: possession of fifty grams or less of marijuana or five grams or less of hashish, N.J.S.A. 2C:35-10(a)(4); being under the influence of marijuana or hashish, N.J.S.A. 2C:35-10(b); failure to make lawful disposition of marijuana or hashish, N.J.S.A. 2C:35-10(c); and use or possession with intent to use marijuana or hashish paraphernalia, N.J.S.A. 2C:36-2. Like PTI, conditional discharge has been generally unavailable to persons who have obtained a previous conditional discharge or been admitted to a PTI program. N.J.S.A. 2C:36A-1(c)(3).

possession. Adopting a contrary interpretation of the statutes, the trial court overruled the ineligibility determination. The court permitted Gomes to apply for PTI and directed the Middlesex County Prosecutor to consider the merits of Gomes's application. The Prosecutor moved for leave to appeal.

The Appellate Division granted interlocutory review of the conflicting trial court decisions, and it consolidated the appeals. Amicus curiae briefs in favor of the defendants' legal position were filed by the American Civil Liberties Union (ACLU) and the New Jersey State Bar Association (NJSBA). In addition, the Attorney General accepted the appellate court's invitation to appear as amicus curiae and joined with the other amici in supporting the defense's statutory interpretation.

The Appellate Division held that a defendant who received a prior conditional discharge of a disorderly persons offense for marijuana possession was ineligible for PTI, notwithstanding the automatic expungement provision of CREAMMA. State v. Gomes, 472 N.J. Super. 515, 536 (App. Div. 2022). The appellate court hinged its decision upon generic language within the PTI statute, N.J.S.A. 2C:43-12(g)(1), which predates CREAMMA and states that a person with a prior conditional discharge "shall not be eligible" for PTI. Id. at 529. The court also found significant that the general expungement statute, N.J.S.A. 2C:52-20, which also was enacted before CREAMMA, expressly

8

allows courts to consider expunged records when deciding whether to grant an application for admission to PTI. Id. at 530.

The Appellate Division relied in part on State v. O'Brien, 418 N.J. Super. 428, 438 (App. Div. 2011), in which it held that a defendant who had received a conditional discharge for a marijuana-related offense was barred from PTI, even when the conditional discharge was later vacated upon petition by the defendant. See Gomes, 472 N.J. Super. at 534-35. The court further cited as "extrinsic evidence" a proposed bill introduced in the Legislature after CREAMMA's enactment, A. 1978 (2022), which sought to amend the PTI statute to expressly allow those who received expungements from CREAMMA of their marijuana-related conditional discharges to apply for PTI. Id. at 532-33. The court treated the proposed bill, and its associated Sponsor's Statement describing the state of "current law," as indicia that CREAMMA itself granted no such eligibility. Id. at 533.

The Appellate Division discerned no language within CREAMMA that appeared to modify or override the pre-existing generic terms of the PTI or expungement statutes. Consequently, it reasoned that the courts should not imply such legislative intent, citing case law disfavoring the "implied repeal[]" of statutory provisions. Id. at 533-34.

9

Sheira, represented by the Office of the Public Defender, and Gomes, represented by private defense counsel, moved for leave to appeal the Appellate Division's decision, and we granted their motions. 251 N.J. 468 (2022); 251 N.J. 471 (2022). The Attorney General, the ACLU, and the NJSBA continue to appear as amici, and we also granted amicus status to Legal Services of New Jersey and the Association of Criminal Defense Lawyers -- New Jersey. The amici unanimously support defendants' interpretation of the applicable statutes to permit PTI for a new offense following a conditional discharge for a pre-CREAMMA marijuana offense. The Morris County Prosecutor continues to endorse that interpretation, while the Middlesex County Prosecutor continues to oppose it.[3]

## II.

As we previewed at the outset, in these appeals we will endeavor to harmonize multiple statutes: the PTI statutes, the expungement statutes, and CREAMMA. "When interpreting different statutory provisions, we are obligated to make every effort to harmonize them, even if they are in apparent conflict." In re Gray-Sadler, 164 N.J. 468, 485 (2000); accord Richter v. Oakland Bd. of Educ., 246 N.J. 507, 538 (2021). Such principles of harmony

---

[3] For clarity, we refrain from using the term "the State" in our analysis, given the divergent legal positions of the respective County Prosecutors.

and consistency are important to a legal system "because they promote impartiality and minimize arbitrariness."  Norman J. Singer & J.D. Shambie Singer, 2B Sutherland Statutory Construction § 53:1 (7th ed. 2022) (entitled "The principle of harmony in statute law").

Because statutory construction is a matter of law, we review the Appellate Division's interpretation of the pertinent statutes de novo.  State v. Fuqua, 234 N.J. 583, 591 (2018).

## A.

We begin with the general statutory scheme concerning pretrial intervention.

PTI "is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior."  State v. Nwobu, 139 N.J. 236, 240 (1995).

The first iteration of PTI in this State was launched in Newark in 1970, with no associated enabling legislation.  Id. at 245.  In the absence of a PTI statute, Rule 3:28 authorized the creation of a vocational-service PTI program operated by the Newark Defendants Employment Project.  Ibid.  By 1976, that program had expanded in various forms to twelve counties.  See Pressler, Current N.J. Court Rules, cmt. 1 on R. 3:28 (1995).

11

In 1976, this Court spotlighted the need for statewide uniformity in PTI programs. State v. Leonardis, 71 N.J. 85, 120-22 (1976) (Leonardis I). The following year, the Court articulated statewide guidelines for the administration of PTI, in the absence of statutes addressing the subject. State v. Leonardis, 73 N.J. 360 (1977) (Leonardis II).

In response to the two Leonardis decisions, the Legislature enacted a statewide PTI program as part of the 1979 Code of Criminal Justice. Codified at N.J.S.A. 2C:43-12 to -22, the PTI system was consistent with the Court's guidance in Leonardis II. "The Code provisions generally mirrored the procedures and guidelines previously established under Rule 3:28." Nwobu, 139 N.J. at 245. Although pretrial diversion "is by its nature part of the prosecutor's charging function, the statutes, procedures, and guidelines involve the judiciary in the administration of PTI." Ibid. To be admitted to PTI, a defendant must receive an initial recommendation by the court's criminal division manager, as well as the consent of the prosecutor. State v. Roseman, 221 N.J. 611, 621 (2015).

From the outset, the primary purpose of PTI has been "to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system." State v. Watkins, 193 N.J. 507, 513 (2008). With that in mind, PTI eligibility has been broadly defined, subject to

12

specified exclusions, to "include[] all defendants who demonstrate the will to effect necessary behavioral change such that society can have confidence that they will not engage in future criminality." Ibid. Accordingly, prosecutors may consider a wide array of factors when determining whether to recommend someone for PTI, such as "[t]he nature of the offense," the motivations of the defendant, the desires of the victim or complainant with respect to prosecution, the social harm perpetrated by the defendant, and "[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior." N.J.S.A. 2C:43-12(e).

Until 2018, the assessment of a defendant's suitability for PTI was based on factors set out in both N.J.S.A. 2C:43-12(e) and Rule 3:28. State v. Johnson, 238 N.J. 119, 128 (2019). However, in 2018 the original version of Rule 3:28 was repealed and replaced with the current Rule 3:28, which eliminates those guidelines. Ibid. The purpose of the new rule is to "realign the [PTI] program to its original purpose to divert from prosecution first time offenders who would benefit from its rehabilitative components." Notices to the Bar, Adoption of New Court Rules 3:28-1 to 3:28-10 (Pretrial Intervention) (effective July 1, 2018), 223 N.J.L.J. 68, 68 (Sept. 25, 2017).

Over the years, a decision as to whether to admit a particular defendant into PTI has been treated as a fundamental prosecutorial function. Leonardis I,

13

71 N.J. at 121; see also State v. K.S., 220 N.J. 190, 199-200 (2015). Judicial review of a prosecutor's decision about PTI admission is "available to check only the most egregious examples of injustice and unfairness." Leonardis II, 73 N.J. at 384. Absent a legal error, courts may overturn a prosecutor's denial of PTI only when the defendant establishes that denial amounts to a "patent and gross abuse of discretion." Nwobu, 139 N.J. at 246-47.

Up until the adoption of CREAMMA, PTI eligibility has been governed by the so-called "one diversion only" policy. To begin with, the PTI statute declares that "[i]t is the policy of the State of New Jersey that supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal offense under the laws of New Jersey." N.J.S.A. 2C:43-12(a) (emphasis added). With respect to defendants who have not been convicted of a past crime but who have instead received a conditional discharge or some other form of supervisory treatment, the PTI statute further provides that

> [s]upervisory treatment may occur only once with respect to any defendant and any person who has previously received supervisory treatment under section 27 of L. 1970, c. 226 ([N.J.S.A.] 24:21-27), a conditional discharge pursuant to N.J.S.A. 2C:36A-1, a conditional dismissal pursuant to L. 2013, c. 158 ([N.J.S.A.] 2C:43-13.1 et al.), or was granted a dismissal due to successful participation in the Veterans Diversion Program pursuant to L. 2017, c. 42

14

([N.J.S.A.] 2C:43-23 et al.) shall not be eligible for supervisory treatment under this section.

[N.J.S.A. 2C:43-12(g)(1) (emphasis added).]

The text of the current Rule 3:28-1(c)(1), which has not been revised since CREAMMA's enactment, repeats the bars set forth in the statute and additionally bars PTI enrollment if the person "previously was enrolled in a diversionary program under the laws of any other state or the United States." According to commentary, this prohibition is to be read consistently with the bar created by N.J.S.A. 2C:43-12(g).[4] Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:28-1 (2023). In addition, before CREAMMA's adoption we observed that expunged records can be used substantively for various purposes, including "in matters relating to decisions about diversion into a supervisory program, to the setting of bail, to the imposition of sentence, to parole decisions, and to a correctional facility's classification decisions." G.D. v. Kenny, 205 N.J. 275, 295 (2011).

Before the Legislature's enactment of CREAMMA in 2021, the Appellate Division recognized the general "one diversion only" facet of the PTI statute, most notably in two cases cited in the Appellate Division's

---

[4] To the extent there is any "direct and inevitable" conflict between the court rules and statutes governing PTI, the statute controls. See State v. Lee, 437 N.J. Super. 555, 564 (App. Div. 2014).

opinion here: State v. McKeon, 385 N.J. Super. 559 (App. Div. 2006), and the aforementioned O'Brien, 418 N.J. Super. 428.

In McKeon, the defendant seeking PTI previously had been charged with driving under the influence in Pennsylvania, a misdemeanor, in 2002. 385 N.J. Super. at 564. The defendant successfully completed pretrial diversion under the Accelerated Rehabilitative Disposition (ARD) program, a Pennsylvania program established under 75 Pa. Cons. Stat. § 3807, that is similar to PTI. In 2004, a New Jersey grand jury charged McKeon with third-degree possession of a controlled substance, specifically cocaine. Ibid. McKeon's application for PTI was rejected by both the criminal case manager and the prosecutor because of his prior enrollment in ARD, which was construed to fall under the statutory bar of N.J.S.A. 2C:43-12(g). Ibid. The trial court upheld the PTI rejection, and the defendant was sentenced to a one-year probationary term. Id. at 564-65.

The Appellate Division reversed in McKeon, holding "that the Legislative intent in enacting N.J.S.A. 2C:43-12(g), [was] to provide a single opportunity for a defendant to enroll in a PTI program in New Jersey" rather than to restrict access by those who had enrolled in a comparable out-of-state program such as ARD. Id. at 571 (emphases added). However, the court acknowledged that an out-of-state pretrial diversion could be taken into

16

consideration when evaluating the appropriateness of admitting a defendant into PTI, along with the various other factors set out in the statute and rule. Ibid. The court noted that, even if it had accepted the State's argument that PTI should be barred by a previous out-of-state diversion, such a bar would apply only "if the act charged in the other state constitutes a crime under the laws of New Jersey." Id. at 572. To do otherwise, the court recognized, "could result in disparate treatment of defendants charged with similar acts." Id. at 572-73.

Five years later, the Appellate Division decided O'Brien, in which the defendant had been charged in 1990 with possession of marijuana, then a disorderly persons offense. 418 N.J. Super. at 431. She applied for, and was granted, a conditional discharge pursuant to N.J.S.A. 2C:36A-1. Ibid. After successfully completing her supervisory treatment, O'Brien's marijuana charge was dismissed by the court. Ibid.

Subsequently, in 2008, O'Brien was charged with third-degree possession of methamphetamine. Ibid. Several months after she was indicted, O'Brien filed a petition for "post-disposition relief" in the municipal court, seeking to vacate her 1990 conditional discharge. Ibid. The petition was granted, the discharge was vacated, and she pled guilty to the 1990 charge, seeking to pave the way for her admission to PTI for the 2008 charge. Ibid.

17

Following those steps, the prosecutor rejected O'Brien's application, noting that her "motion to vacate the prior conditional discharge was done solely in anticipation of now being accepted into PTI." Id. at 431-32. The trial court reversed the prosecutor's decision, finding that the denial constituted "a 'patent and gross' abuse of discretion." Id. at 432.

The Appellate Division in O'Brien reversed the trial court's ruling. The appellate court agreed with the prosecutor that the defendant's previous discharge rendered her statutorily ineligible for PTI, even though that disposition had been subsequently vacated. Id. at 438. The court reasoned it was "the fact that the individual previously received supervisory treatment which prohibits . . . re-enrollment into another diversionary program under PTI." Ibid. Citing the underlying goals of PTI "to deter future criminal conduct and to provide a one-time diversion from prosecution," the court found it was not an abuse of discretion for the prosecutor to deny the defendant's application. Id. at 441 (emphasis added).[5]

B.

We next turn to the history and pertinent terms of the New Jersey expungement statutes.

---

[5] This Court's review was not sought in either McKeon or O'Brien, and their holdings have not been analyzed in depth in our opinions until today.

18

In 1979, the same year that PTI was codified, the Legislature enacted Chapter 52 of the Code of Criminal Justice. By enacting Chapter 52, the Legislature "intended to establish 'a comprehensive statutory scheme for the expungement of criminal records'" and to create "an equitable system of expungement of indictable and nonindictable offenses as well as of arrest records." State v. T.P.M., 189 N.J. Super. 360, 364 (App. Div. 1983) (first quoting Allen, Legislative History of Amendments to the New Jersey Code of Criminal Justice Passed Prior to the Effective Date of the Code, 7 Crim. Just. Q., 41, 48 (1980); and then quoting S. Judiciary Comm. Statement to S. 3203 (June 18, 1979)). Before the 1979 enactment, "there was no cohesive or uniform expungement practice in" New Jersey. Ibid.

Through Chapter 52, the Legislature directed that the expungement statute should "be construed with the primary objective of providing relief to the reformed offender who has led a life of rectitude and disassociated himself with unlawful activity." N.J.S.A. 2C:52-32. However, the Legislature instructed the statute should not be interpreted "to create a system whereby persistent violators of the law or those who associate themselves with continuing criminal activity have a regular means of expunging their police and criminal records." Ibid.

Among the components of Chapter 52 is a general provision delineating how expunged records "may" be supplied and used in relation to a defendant's present eligibility for supervisory treatment or diversion programs. That provision, codified at N.J.S.A. 2C:52-20, states:

> Expunged records <u>may be used by the court in determining whether to grant or deny</u> the person's application for acceptance into a supervisory treatment or diversion program for subsequent charges. Any expunged records which are possessed by any law enforcement agency <u>may be supplied</u> to the Attorney General, any county prosecutor, or court of this State when same are requested and are to be used <u>for the purpose of determining whether or not</u> to accept a person into a supervisory treatment or diversion program for subsequent charges.
>
> [N.J.S.A. 2C:52-20 (entitled "Use of expunged records in conjunction with supervisory treatment or diversion programs") (emphases added).]

In 2019, the Legislature enacted an expungement reform bill, <u>S. 4154</u>. The reform bill included major revisions to the expungement system, including "clean slate" expungement for those who had not committed an offense in ten years, N.J.S.A. 2C:52-5.3, as well as the sealing of low-level marijuana convictions upon the disposition of a case, <u>id.</u> at -5.2. This 2019 amendment redefined the concept of "expungement" in Chapter 52 to mean "the extraction, sealing, impounding, or isolation of all records on file." <u>Id.</u> at -1.

The 2019 amendment also implemented several automatic expungement mechanisms. Among them was the automatic expungement of records and information relating to an arrest or charge, which shall occur "at the time of dismissal, acquittal, or discharge." Id. at -6(a). No separate action by the defendant is required. Ibid. These automatic provisions were momentous because, up until their passage in 2019, the expungement process generally required that an individual directly file a petition for such relief with the court. See id. at -5.1.

Pursuant to Chapter 52, generally, "if an order of expungement of records . . . is granted by the court," expunged records are not destroyed, but "shall be placed in the control of a person who has been designated by the head of" the relevant "law enforcement and criminal justice agencies which . . . possess the records." Id. at -15(a). Such records expunged by a court order can then be used for various statutorily permitted purposes. In certain circumstances (such as a future conviction), those expunged records can be fully restored. N.J.S.A. 2C:35-14(m)(4). In addition, restoration of records due to a new conviction can have the effect of barring future expungement. Ibid.

Another context in which expunged records generally are to be considered is in connection with pretrial release and bail determinations.

Expunged records "of prior arrests or convictions shall be provided to any court, county prosecutor, the Probation Division of the Superior Court, the pretrial services agency, or the Attorney General" to assist in making bail and pretrial release determinations. N.J.S.A. 2C:52-21. Such use of those records is consistent with the wide array of factors that normally may be considered by courts in such custodial determinations, including the "defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances." N.J.S.A. 2A:162-20(c)(1). However, as we will discuss below, since the enactment of CREAMMA in 2021, one factor is explicitly excluded from consideration in such pretrial detention or bail decisions: certain prior marijuana-related offense records.

## C.

In the November 2020 general election, the voters adopted an amendment to the New Jersey Constitution legalizing the possession, consumption, and commercialization of cannabis and products containing it by persons twenty-one years of age or older, but "subject to regulation by the Cannabis Regulatory Commission." Made effective January 1, 2021, the

amendment, Article IV, Section 7, Paragraph 13 of the New Jersey Constitution states as follows:

> The growth, cultivation, processing, manufacturing, preparing, packaging, transferring, and retail purchasing and consumption of cannabis, or products created from or which include cannabis, by persons 21 years of age or older, and not by persons under 21 years of age, shall be lawful and subject to regulation by the Cannabis Regulatory Commission created by L. 2019, c. 153 ([N.J.S.A.] 24:6I-5.1 et al.), or any successor to that commission.
>
> [Ibid.]

The amendment does not apply to cannabis and products containing it that are "dispensed and consumed for medical purposes pursuant to any law enacted by the Legislature" and regulated thereunder, or to hemp or hemp products subject to regulations adopted pursuant to other legislation. Ibid. The amendment further defines "cannabis" to exclude "unregulated cannabis, referred to as marijuana, and products created from or which include marijuana." Ibid.[6]

"On February 22, 2021, the Legislature enacted three bills to establish a broad regime of civil and criminal provisions to regulate the newly legalized activity and achieve the constitutional amendment's public policy goals."

---

[6] Defendants' conditional discharges arose out of their charged possession of marijuana; they do not contend they possessed regulated cannabis.

23

DCPP v. D.H., 469 N.J. Super. 107, 128 (App. Div. 2021), certif. denied, 250 N.J. 347 (2022) and 250 N.J. 395 (2022).  The three enacted bills included Chapter 16 (enacting A. 21 (2020)), known as CREAMMA, codified in relevant part at N.J.S.A. 2C:35-5 to -10 and N.J.S.A. 24:6I-24.  The other two adopted bills are Chapter 19, an act "concerning certain criminal and civil justice reforms," L. 2021, c. 19 (enacting A. 1897 (2020)), and Chapter 25, an act "addressing certain regulated substances, with a particular emphasis on possession or consumption of various forms of cannabis," L. 2021, c. 25 (enacting A. 5342 (2021)).

In its findings and declarations section, CREAMMA articulates a legislative intent "to adopt a new approach to our marijuana policies . . . in a similar fashion to the regulation of alcohol for adults."  N.J.S.A. 24:6I-32(a). The statute broadly includes fourteen other findings and declarations.  Among them, finding (e) highlights that "Black New Jerseyans are nearly three times more likely to be arrested for marijuana possession than white New Jerseyans, despite similar usage rates."  Id. at -32(e).  Finding (f) acknowledges that New Jersey spends millions per year in marijuana possession enforcement costs.  Id. at -32(f).  In addition, finding (n) recognizes that "[a] marijuana arrest in New Jersey can have a debilitating impact on a person's future, including consequences for one's job prospects, housing access, financial health, familial

24

integrity, immigration status, and educational opportunities." Id. at -32(n).

Also, finding (o) declares that "New Jersey cannot afford to sacrifice public safety and individuals' civil rights by continuing its ineffective and wasteful past marijuana enforcement policies." Id. at -32(o).

Among CREAMMA's provisions legalizing and regulating adult-use cannabis was an expansive expungement provision, codified at N.J.S.A. 2C:52-6.1, entitled "Certain crimes expunged by operation of law." That provision directs the automatic expungement of any prior conviction for the obtaining or possession of marijuana, certain other marijuana offenses, and "any disorderly persons offense or petty disorderly persons offense subject to conditional discharge pursuant to N.J.S.A. 2C:36A-1." (emphasis added). The provision reads in full, as follows:

> On the first day of the fifth month next following the effective date of L. 2021, c. 16 ([N.J.S.A.] 24:6I-31 et al.), any case that, prior to that effective date, includes a conviction or adjudication of delinquency solely for one or more crimes or offenses involving manufacturing, distributing, or dispensing, or possessing or having under control with intent to manufacture, distribute, or dispense, marijuana or hashish in violation of paragraph (12) of subsection b. of N.J.S.A. 2C:35-5, or obtaining, possessing, using, being under the influence of, or failing to make lawful disposition of marijuana or hashish in violation of paragraph (3) or (4) of subsection a., or subsection b., or subsection c. of N.J.S.A. 2C:35-10, or a violation involving marijuana or hashish as described herein and a violation of N.J.S.A. 2C:36-2 for using or possessing

25

> with intent to use drug paraphernalia with that marijuana or hashish, alone or in combination with each other, <u>or any disorderly persons offense or petty disorderly persons offense subject to conditional discharge</u> pursuant to N.J.S.A. 2C:36A-1, <u>shall be expunged by operation of law</u>, and any remaining sentence, ongoing supervision, or unpaid court-ordered financial assessment as defined in section 8 of <u>L.</u> 2017, <u>c.</u> 244 ([N.J.S.A.] 2C:52-23.1) <u>shall be vacated by operation of law</u>. The Administrative Director of the Courts, in consultation with the Attorney General, may take any administrative action as may be necessary to expeditiously effectuate the expungement of records associated with any expunged matter.
>
> [N.J.S.A. 2C:52-6.1 (emphases added).]

Notably, the phrase "by operation of law" appears nowhere else in the entire Criminal Code.[7]

In conjunction with CREAMMA's automatic expungement provisions, on February 22, 2021, the Attorney General issued Attorney General Law Enforcement Directive No. 2021-1, which ordered that any guilty plea, verdict, <u>placement in diversionary program</u>, or other entry of guilt prior to that date for a qualified marijuana-related offense be fully vacated "by operation of law."

---

[7] The phrase does appear in some civil statutes to convey an automatic disposition without the need for court filings. <u>See, e.g.</u>, N.J.S.A. 2A:17-56.67(a) (an obligation to pay child support "shall terminate <u>by operation of law</u> without order by the court" when a child turns nineteen (emphasis added)); N.J.S.A. 17B:32-47(a) (in delinquency proceedings against insolvent insurers, court-appointed liquidators "shall be vested <u>by operation of law</u> with the title to all of the [insurer's] property" upon the entry of the final order of liquidation (emphasis added)).

In addition, the Attorney General's Directive ordered that "[a]ny [marijuana-related] disorderly persons offense or petty disorderly persons offense <u>subject to conditional discharge</u> pursuant to this section" be vacated. <u>Ibid.</u> (emphasis added).

As the Appellate Division and the Middlesex County Prosecutor correctly point out, the Legislature did not include within CREAMMA an explicit provision revising the general PTI statute to address the impact of a previous-but-now-vacated conditional discharge upon a person's future PTI eligibility. Nor did the Legislature revise the expungement statute in a manner that addresses that particular eligibility question directly. However, the language of CREAMMA expungement is unique. It provides for automatic expungement of "any case" "by operation of law." N.J.S.A. 2C:52-6.1.

This is unlike traditional expungement in several ways. First, defendants with qualifying marijuana-related conditional discharges do not need to file any petition or request for expungement; expungement simply happens "by operation of law." <u>Compare</u> N.J.S.A. 2C:52-6.1 <u>with</u> N.J.S.A. 2C:52-7 to -10.1.[8] Second, there is no discretion for a court to refuse to

---

[8] Pursuant to an administrative order this Court issued on July 1, 2021, the Administrative Office of the Courts uses an automated process to remove from the case management system records of marijuana and hashish cases that are dismissed, vacated, or expunged "by operation of law" under CREAMMA. <u>See</u> <u>Notices to the Bar</u>, <u>Automated Processes for Certain Marijuana and</u>

27

expunge certain records, no mechanism for the State to object to the expungement of a particular marijuana offense, and no way the specified marijuana convictions or marijuana-related conditional discharges can be reinstated based on later criminal activity. Compare N.J.S.A. 2C:52-6.1 with N.J.S.A. 2C:35-14 and N.J.S.A. 2C:52-7 to -14. Third, the "primary objective" of ordinary expungement is to grant relief to a defendant who has become rehabilitated by "[living] a life of rectitude and disassociat[ing] . . . with unlawful activity." N.J.S.A. 2C:52-32. Not so with CREAMMA, where expungement of "any case" happens "by operation of law" because of the Legislature's complete rejection of "ineffective and wasteful past marijuana enforcement policies." N.J.S.A. 24:6I-32(o).

## III.

Having set forth key aspects of CREAMMA, as well as the pre-existing terms of the PTI and expungement statutes, we now undertake to harmonize those laws. In doing so, we adhere to the cardinal principle that the judicial construction of statutes must always seek as its "paramount goal" to carry out

---

Hashish Cases in Accordance with the Marijuana Decriminalization Law, 227 N.J.L.J. 1794, 1794 (July 12, 2021). If the automated process fails to remove an eligible person's case from the system, that person may move for relief before the municipal court or Superior Court that had jurisdiction over that person's case, or file an expungement petition with the Superior Court, with appropriate notice. Id. at 1795.

28

the Legislature's apparent intent.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 587 (2021) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  "The best evidence of that legislative intent is the statutory language," and, accordingly, that is the first place that the Court looks.  Ibid.

In situations in which, as here, the Court is asked to determine the intended overall meaning of the texts of multiple statutes that were adopted at different times, additional well-settled principles come into play.  First, the most recent statutory enactment ordinarily supersedes, or at least qualifies or illuminates, language that was adopted in earlier statutes.  Silver v. N.Y. Stock Exch., 373 U.S. 341, 357 (1963); 2B Sutherland Statutory Construction § 51:2 (observing "the newer provision controls as the latest legislative expression").  Here, CREAMMA, enacted in 2021, is the newest statute before us.  By contrast, the PTI and expungement statutes both date back to 1979, although, as noted above, the expungement statute was amended not long ago in 2019.  CREAMMA, adopted in the wake of a constitutional amendment approved by the voters in 2020, embodies the most recent articulation of legislative intent concerning marijuana offenses.

A second guiding interpretative principle we bear in mind is that a more specific statutory provision usually controls over a more general one.  N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591 (1995); accord 2B

29

Sutherland Statutory Construction § 51:2. In this instance, CREAMMA is targeted at marijuana-related offenses as a subset of criminal law, whereas the PTI and expungement statutes apply broadly to a host of other criminal offenses.

This is not to say, of course, that we can disregard clear language within the pre-existing PTI and expungement provisions just because CREAMMA is a newer, marijuana-specific statute. However, as we will soon show, the terms of CREAMMA can be aligned with those other statutes in a harmonious manner that carries out the overall intent of the Legislature.

To begin with, as noted above, the general expungement statute contains the permissive term "may," in authorizing that expunged records "may be used . . . in determining whether to grant or deny [a] person's application for acceptance into a supervisory treatment or diversion program," and that such expunged records "may be supplied" to prosecuting authorities or the courts in making such determinations. N.J.S.A. 2C:52-20. The expungement statute does not state that expunged records "must" or "shall" be used for that purpose. Unlike its use of permissive language with respect to diversionary programs, however, before CREAMMA, the Legislature required that

expunged records of all prior arrests or convictions[9] "shall be provided to any court," prosecutor, probation division, or pretrial services agency for use in the particular context of a bail hearing or pretrial release determination in Section 21 of the expungement statute.  See id. at -21.

The Legislature's choice of the term "may" in Section 20 versus "shall" in Section 21 of the expungement statute is consistent with a permissive, rather than mandatory, use of expunged records outside of a bail or pretrial detention context.  Although there can be exceptions, we customarily deem the term "may" within a statute to connote something that is not obligatory.  See, e.g., Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory.").

Another point stressed by defense counsel, the amici, and the Morris County Prosecutor is that CREAMMA revised the expungement and drug statutes to vacate and expunge qualifying previous marijuana convictions and dispositions "by operation of law."  N.J.S.A. 2C:52-6.1; N.J.S.A. 2C:35-23.1(b)(1) and (b)(2).  At the very least, the phrase "by operation of law"

---

[9]  See infra at pages 35-36 for a discussion of 2021 legislation, codified at N.J.S.A. 2A:162-24(b) and -25(c)(1)(b), that disallowed expunged marijuana conditional discharge records from being considered in the bail and pretrial detention contexts.

31

signifies that an individual with an eligible marijuana conviction or conditional discharge should not have to take affirmative steps to file an expungement petition with a court or prove rehabilitation to obtain relief. The record and adverse effect of those previous charges is to be eliminated automatically and instantaneously. The previous conduct, which had been illegal under former statutes and is now legal, is intended to be treated as if it did not happen.[10]

The Legislature did carve out an exception in the 2021 legislation, not pertinent to the defendants here, for marijuana possessors who are under the age of twenty-one, but even the punitive impact of that was abated to require

---

[10] This legislative intent is reflected in the Assembly Committee Statement to A. 1897, one of the companion bills enacted with CREAMMA. See A. Comm. Statement to A. 1897 (July 2, 2020) ("Beginning immediately upon the enactment of the bill, any arrest, charge, conviction, or adjudication of delinquency, and proceedings related thereto, for any of the above described broad list of marijuana or hashish offenses that occurred prior to the bill's effective date would be deemed not to have occurred . . . ." (emphasis added)). Such a consequence of the marijuana reform law's automatic expungement in N.J.S.A. 2C:52-6.1 corresponds with the "deemers" of our ordinary expungement laws when an order of expungement is issued. See N.J.S.A. 2C:52-27 ("[I]f an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred . . . ." (emphasis added)); N.J.S.A. 30:4-80.11 ("If an order expunging such [mental health] commitment is granted, the commitment shall be deemed not to have occurred and the petitioner may answer accordingly any question relating to its occurrence." (emphasis added)). The critical difference is that under CREAMMA and its associated enactments, relief for the offender is automatic and no individual "order" of expungement is needed.

32

only a warning rather than a criminal disposition.  See N.J.S.A. 2C:33-15(a)(1).

As the Attorney General has pointed out, the Legislature's use within CREAMMA's expungement provision of a broad term -- covering "any case" that transpired prior to CREAMMA's effective date -- is especially instructive. See N.J.S.A. 2C:52-6.1.  The term "any" has been defined to connote, among other things, "every" and "unlimited."  Merriam-Webster's Collegiate Dictionary 56 (11th ed. 2020).  A former marijuana charge that resulted in a conditional discharge or other diversion is surely a "case."  Indeed, the PTI statute itself logically refers to PTI as the treatment of a particular "case."  See N.J.S.A. 2C:43-12(e)(15) (stating PTI is a way of "processing [a defendant's] case" outside of the "traditional criminal justice system").

The text of the PTI statute itself can be harmonized with CREAMMA in a similar manner.  To be sure, we are mindful of the PTI statute's generic language in N.J.S.A. 2C:43-12(g)(1) -- that a person with a previous conditional discharge "shall not be eligible" for PTI.  But the PTI statute does not address the present distinctive and extraordinary situation in which conduct that had previously been deemed unlawful is now, in retrospect, deemed to have not occurred.

33

The PTI statute does not say that its "one diversion only" general statutory bar must penalize individuals who had been charged with a marijuana offense that the Legislature has since declared, through a comprehensive reform law, to be a nullity. In fact, the Attorney General and the Prosecutors acknowledge that persons who had previous marijuana <u>convictions</u> are allowed to apply for PTI when charged with new offenses. There is nothing in the text or enactment history of CREAMMA that supports a legislative intent to deprive persons with previous <u>conditional discharges</u> of that same opportunity.

The Appellate Division was hesitant to reach this conclusion out of concern that this interpretation would be an "implied repeal[]" of the pre-existing PTI and expungement statutes. <u>Gomes</u>, 472 N.J. Super. at 533. But harmonizing statutes to determine an overarching consistent and logical construction that carries out manifest legislative intent is not the same thing.

Our analysis is not an implied repeal. Instead, it is the discharge of our "affirmative duty to reconcile" the various legislative pronouncements, <u>In re Referendum on Trenton Ord. 09-02</u>, 201 N.J. 349, 366 (2010), "so as to give full effect to each constituent part of an overall legislative scheme," <u>State v. Hodde</u>, 181 N.J. 375, 379 (2004). Here, examining the "overall scheme" in full, it is apparent that the Legislature intended persons who have previous marijuana conditional discharges in "any case" to become eligible "by

34

operation of law" to be considered for PTI in the future -- even though more explicit statutory language could have been used to accomplish that.

We recognize that, as the Middlesex County Prosecutor has noted, the Legislature expressly provided in a companion bill enacted with CREAMMA that previous marijuana conditional discharges could no longer be considered in bail and pretrial detention decisions, see L. 2021, c. 19, §§ 9-10 (amending, as relevant here, N.J.S.A. 2A:162-24(b) and -25(c)(1)(b)), but did not include a similar express prohibition for the PTI setting. But there are reasons why such an explicit amendment might have been viewed as necessary in the specific context of pretrial release and bail reform.

For one thing, as we have already noted, Section 21 of the general expungement statute concerning bail and pretrial release decisions, unlike Section 20 concerning PTI, used the mandatory term "shall" rather than "may." The Legislature therefore needed to enact specific language to alter the mandate of Section 21.

Additionally, under the Criminal Justice Reform Act of 2014 (CJRA), N.J.S.A. 2A:162-15 to -26, the pretrial confinement of persons upon their arrest implicates distinctive public policy issues of individual liberty and public safety, arising at the outset of the criminal process. In light of that, the Legislature understandably could have wanted to make doubly sure that a

35

previous marijuana conditional discharge would not provide the grounds to incarcerate an arrestee as a supposed public safety risk under the factors in N.J.S.A. 2A:162-20. This is especially important because in some instances, such a prior conditional discharge might be the only disposition shown on the arrestee's criminal record.

Consistent with the "clean slate" public policies underlying CREAMMA and its companion laws, the Legislature logically gave special emphasis to the pretrial detention and bail setting to assure that arrestees with a marijuana conditional discharge did not lose their liberty precipitously because of that prior record. That emphasis, however, does not undermine the reasons we have already explained in harmonizing the new laws in the PTI context as well.

Our statutory interpretation is consistent with the litany of findings expressed in N.J.S.A. 24:6I-32(a) through (o); they reflect a clear legislative intent to construe CREAMMA and its companion bills broadly and robustly so as to achieve their remedial purposes. See Brugaletta v. Garcia, 234 N.J. 225, 248 (2018) (illustrating the importance of legislative findings and declarations, and the need to construe statutes in a manner that is faithful to "patent legislative desire" as reflected in those findings and declarations).

As part of its reasoning, the Appellate Division rested on the introduction of A. 1978 (2022), an Assembly bill with the stated aim of expressly granting PTI eligibility to persons with records expunged or vacated by CREAMMA. Gomes, 472 N.J. Super. at 532. We decline to afford the proposed bill such significance. The bill only reflects the current stated desires of the individual legislators who sponsor it. It does not represent the collective intent of the Legislature at the time when it enacted CREAMMA in February 2021, or, for that matter, the intent of the legislators who adopted the PTI and expungement statutes years ago.

As is well established, one "may not rely on pending legislation," which may never be adopted, to establish legislative intent. Johnson v. Roselle EZ Quick, LLC, 226 N.J. 370, 379 (2016). Moreover, post-enactment statements by legislators who had been involved earlier in passing a bill about the supposed intent of a codified provision "are of limited legal value" in construing such a provision. N.J. Coal. of Health Care Prof'ls, Inc. v. Dep't of Banking & Ins., 323 N.J. Super. 207, 255-56 (App. Div. 1999).

The Appellate Division's pre-CREAMMA opinions in McKeon and O'Brien, do not control the analysis of defendants' circumstances. Neither opinion involved defendants who, as in the cases now before us, had received conditional discharges for conduct that was thereafter legislatively deemed not

37

to have occurred. Nor did <u>McKeon</u> or <u>O'Brien</u> involve legislative reform initiatives akin to those sweepingly embodied in CREAMMA. We should note, however, that in distinguishing those cases, we do not eviscerate in other non-marijuana contexts the "one diversion only" general mandate of N.J.S.A. 2C:43-12(g). That provision continues to apply for such other matters not within CREAMMA's ambit.

We must make clear that our reversal of the Appellate Division's decision does not automatically entitle a PTI applicant with a previous marijuana conditional discharge to be admitted into the program. In Gomes's case, the Middlesex County Prosecutor opposed the PTI application, so the matter must be remanded to the trial court to consider whether the various factors under the PTI statute warrant his admission to the program. When assessing those factors, the prosecutor and the court must ignore the existence and circumstances that produced Gomes's earlier charges and conditional discharge. In Sheira's case, the Morris County Prosecutor has already agreed through a joint motion for his admission into PTI, so we remand his case to implement that joint decision, unless Sheira has committed another new offense or his circumstances otherwise have materially changed.[11]

---

[11] For sake of uniformity, we direct the Criminal Practice Committee to develop and present expeditiously to this Court a proposed amendment of <u>Rule</u> 3:28-1(c)(1) conforming with our opinion. In the interim, this opinion controls

38

We stress that this is an exceptional situation involving a sweeping new statute that we have endeavored to harmonize sensibly with pre-existing laws. Our decision harmonizing the provisions should not be interpreted as an invitation to disregard statutory language that has been unaltered by new laws. The result we reach in this distinctive case is amply supported by sound interpretive principles.

## IV.

The judgment of the Appellate Division is reversed, and the two cases are each remanded to the respective trial courts for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUDGE SABATINO's opinion.

---

the eligibility of all PTI applicants who have previously received a conditional discharge for a possessory marijuana offense expunged or vacated by CREAMMA.